227 So.2d 583

**Aubrey PATE**

**v.**

**STATE.**

**4 Div. 642.**

Court of Appeals of Alabama.

[Transferred to 4 Div. 5. Court of Criminal Appeals of Alabama].

Sept. 9, 1969.

Rehearing Denied by Court of Criminal

Appeals Oct. 21, 1969.

Jas. T. Gullage and Walker & Hill, Opelika, for appellant.

MacDonald Gallion, Atty. Gen., and Richard F. Calhoun, Asst. Atty. Gen., for the State.

CATES, Judge.

Appeal from conviction of possession of a narcotic drug, to-wit: Pantopon. Sentence to the penitentiary for five years.

## I

Pate was seen to come from a house. A police captain accosted him. The officer testified:

"Q. Tell the court and jury what if anything transpired there on that occasion in the presence of Mr. Pate, please sir.

"A. I was observing the house, which I had in the past, I had observed it before; and a F–85 green Oldsmobile was in front of the house, which it had been before.

"MR. SAMPLES: I object to that, may it please the Court, and move to exclude it.

"THE COURT: Sustained as to 'had been before.'

"Q. Just tell what was there at that time, Captain; go right ahead.

"A. The Oldsmobile was sitting in front of the house. There was a little lady in the car. I went on down to the end of the street and parked, just observing it—which the street is a very short street. And as the car started to drive off I approached the car. He pulled across the street and attempted to turn around, and he backed up almost to the front of Mr. Elmer's house when he backed up and turned around to go back south on 19th Avenue. When I approached the car Mr. Pate jumped out and went behind a cedar tree, or ran around a cedar tree—not a very big tree, a small tree—and stooped over and throwed some articles under the tree, very light like; you know, just kind of tossed them up under the tree. * * *"

The discarded articles were turned over to Dr. Purnell, State Department of Toxicology, who identified one of them as a vial which, on being tested, he testified as being pantopon, a derivative of opium.

■ The defense adduced proof through one Robert "Rabbi" Edwards tending to demonstrate that the yard where Pate apparently abandoned the pantopon as being literally seeded with narcotics. Such a narrative addressed itself only to the jury.

## II

Defense counsel argues that the trial judge should have sustained a demurrer to the indictment. Basically it is argued here that the expression, " * * * did unlawfully have in their possession narcotic drugs, to-wit: Pantopon, contrary to law, to-wit: Title 22, Sections 242 and 255 of the Code of Alabama as recompiled in 1958

and as amended in 1961, * * *"[1] is too vague and breaches the rule of Gayden v. State, 262 Ala. 468, 80 So.2d 501.

Nowhere in § 242, T. 22, as amended, is there any prohibition against mere possession of a narcotic drug such as is contained in § 254 of that title. However, § 255, as amended in 1957, has such a provision.

Can we ignore the portion of the indictment following the specification "Title 22, Sections 242 and 255, etc."? We consider that in this indictment the references to the statutory source are matters of convenience and not of substance.

If for laymen ignorance of the law is no excuse, certainly courts must then take judicial notice of public laws. Thagard v. Brock, 282 Ala. 262, 210 So.2d 821. Code 1940, T. 15, § 243, obviates an indictment's stating presumptions of law or matters judicially noticed.

Also, § 232, T. 15 dispenses with the former " 'contrary to the form of the statute.' " Whaley v. State, 17 Ala.App. 661, 88 So. 24, is not of controlling influence here.

Allen v. State, 33 Ala.App. 70, 30 So.2d 479, encapsulates the pertinent rule thus:

" * * * The misrecital of the code sections did not render the complaint void, if the facts set forth constituted an offense under any statute."

■ In this indictment, the references to citations in legal books are mere lapsus calami. The mistake therein was only of the proper place to find a law which unquestionably existed. Such a scrivener's slip should not hamstring the State.

### III

■ Pantopon was proved by Dr. Purnell's testimony to be a derivative of opium.

We find no difficulty in finding that this was enough to make out a basis for the jury's inferring that this was a narcotic drug as charged in the indictment. Also, it brought the substance within the prohibition of Code 1940, T. 22, § 255(b), as found in § 5 of Act No. 397, approved September 4, 1957.

This offense, according to the State, occurred May 17, 1967. Therefore, the definition of drugs in § 242, T. 22, as amended by Act 198, approved September 15, 1961, was controlling. § 232, as amended, defines "opium" to include, inter alia, any derivative, etc., of opium.

Under this view, it is not needful to determine the scope of the reference in Act 198, supra, to "the narcotics laws of the United States" which appellant claims is an unconstitutional delegation of our Legislature's sovereign prerogative to the Congress or to Federal bureaucrats.

### IV

The final contention for error below is based on a ruling which appears during the examination in chief of defense witness Edwards:

"A. Well, no, not exactly about no Pantopon being in there but—

"MR. BENTON: We object to anything further.

"Q. Do you know anything about any narcotics being in that yard?

"MR. BENTON: We object to that, if the Court please.

"THE COURT: Sustained."

We find it unnecessary to pass on this latter ruling because the transcript shows immediately thereafter the following:

---

1. While Michie's 1958 Revision of the 1940 Code and subsequent statutes has never been officially adopted under Constitution 1901, § 85, there is, nonetheless, nothing erroneous in citing it. Our Chief Justice cited this compilation in Young v. State, 283 Ala. 676, 220 So.2d 843.

"Q. Do you know what Pantopon looks like?

"A. Yes, sir.

"Q. Have you seen it before?

"A. Yes, sir.

"Q. Had you seen any at that house before Mr. Pate and Mr. McNurtry came there?

"A. No, sir.

"Q. Was there any in the back yard of that house?

"MR. BENTON: We object.

"THE COURT: Back yard?

"MR. SAMPLES: Yes, sir.

"THE COURT: Sustained.

"Q. Was there any hidden in the front yard before Mr. Pate and Mr. McNurtry came?

"A. Well, we found some out there once.

"Q. Did you find it before this occasion?

"A. Yes, sir.

"Q. Isn't it a fact that—

"MR. BENTON: We object to anything further, may it please the Court.

"THE COURT: Until you establish the time.

"Q. When did you find Pantopon out there?

"A. Well, I don't remember. I cut that grass there once and I found some wasn't no label on it."

See Supreme Court Rule 45.

Under Code 1940, T. 15, § 389, we have read the entire record and consider the judgment below is due to be

Affirmed.